Glenn M.W. SCOTT, Petitioner,

v.

**FOOD AND DRUG ADMINISTRATION,**
Respondent.

Nos. 82–3544, 82–3759.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 25, 1984.

Decided Feb. 23, 1984.

Glenn M.W. Scott argued, pro se.

Donald O. Beers, Food and Drug Admin., Rockville, Md., John J. Powers, II, Margaret G. Halpern argued, Dept. of Justice, Antitrust Div., Washington, D.C., for respondent.

Ellen J. Flannery, Covington & Burling, Washington, D.C., for amicus curiae Cosmetic, Toiletry and Fragrance Assn.

Daniel R. Thompson, Mark W. Smith, Washington, D.C., for amicus curiae Certified Color Mfrs. Assn.

Before ENGEL, KRUPANSKY and WELLFORD, Circuit Judges.

PER CURIAM.

Petitioner, acting pro se, seeks judicial review of 21 C.F.R. 74.1205, a regulation issued by the Food and Drug Administration (FDA) authorizing the permanent listing and therefore the continued use of a color additive, D & C Green No. 5, in drugs and cosmetics.[1] This regulation was promulgated by the FDA after it determined through tests required under the Color Additive Amendments of 1960 that D & C Green No. 5, then provisionally listed, was safe for said use. Judicial review of this regulation is authorized by 21 U.S.C. § 371(f)(1), (3).

D & C Green No. 5 contains another color additive, D & C Green No. 6, manufactured through the use of p-toluidine, which has been proven to be a carcinogenic when tested separately, and which is present in minute quantities as a chemical impurity in D & C Green No. 5. After extensive tests, the FDA determined that D & C Green No. 5, as a whole, did not cause cancer in test animals. It also determined that p-toluidine was not itself a color additive. It concluded, therefore, that the Delaney Clause, contained in the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.,* regulating the use of color additives, did not bar the permanent listing of D & C Green No. 5. This clause provides:

*A color additive (i) shall be deemed unsafe, and shall not be listed,* for any use which will or may result in ingestion of all or part of such additive, *if the additive is found by the Secretary to induce cancer when ingested by man or animal,* or if it is found by the Secretary, after tests which are appropriate for the evaluation of the safety or additives for use in food, to induce cancer in man or animal, and (ii) shall be deemed unsafe, and shall not be listed, for any use which will not result in ingestion of any part of such additive, if, *after tests which are appropriate for the evaluation of the safety of additives for such use,* or after other relevant exposure of man or animal to such additive, it is found by the Secre-

---

1. Petitioner filed his first petition for review after the FDA announced on June 4, 1982 that it was permanently listing D & C Green No. 5. On July 1, 1982, petitioner filed objections to the order with the agency. On September 3, 1982, the FDA stayed the effect of the June 4 order as a result of these objections. On November 2, 1982, the FDA, after consideration of petitioner's objections, terminated the stay and confirmed its original order. Petitioner then filed his second petition seeking judicial review of the November 2nd order. This court ordered consolidation of the two petitions.

tary to induce cancer in man or animal
. . . .

21 U.S.C. § 376(b)(5)(B) (emphasis added).

Having found the Delaney Clause inapplicable, the FDA then evaluated the risk posed by the presence of p-toluidine in D & C Green No. 5 under the General Safety Clause of the Food, Drug and Cosmetic Act, which provides:

The Secretary shall not list a color additive under this section for a proposed use unless the data before him establish that such use, under the conditions of use specified in the regulations, will be safe
. . . .

21 U.S.C. § 376(b)(4).

The FDA regulations governing approval of color additives define "safe" as meaning "that there is convincing evidence that establishes with reasonable certainty that no harm will result from the intended use of the color additive." 21 C.F.R. § 70.3(i).

The FDA first isolated the trace amounts of p-toluidine contained in D & C Green No. 5 and determined that the maximum life-term average individual exposure to p-toluidine from use of D & C Green No. 5 would be 50 nanograms per day. The FDA then extrapolated from the level of risk found in animal bioassays to the conditions of probable exposure for humans using two different risk assessment procedures. Under the first procedure, the upper limit individual's life time risk of contracting cancer from exposure to 50 nanograms per day of p-toluidine through the use of D & C Green No. 5 was 1 in 30 million; the second procedure resulted in a calculation of a 1 in 300 million risk. The agency concluded "that there is a reasonable certainty of no harm from the exposure to p-toluidine that results from the use of D & C Green No. 5." Fed.Reg. 24284 (1982).

Petitioner asserts on appeal that by permanently listing the color additive D & C Green No. 5, the FDA violated the Delaney Clause and the General Safety Clause of the Food, Drug, and Administration Act. Petitioner does not contest the validity of the tests employed by the FDA in determining that D & C Green No. 5 was safe for its intended uses but rather asserts that the Delaney Clause, as a matter of law, prohibits approval of a color additive when it contains a carcinogenic impurity in any amount and that the FDA has no discretion to find D & C Green No. 5 "safe" under the General Safety Clause because "[it is not] possible to establish a safe level of exposure to a carcinogen." The Agency found essentially that D & C Green No. 5, after studying the tests, did not cause cancer in test animals.

■ The decision of the FDA to approve permanent listing of color additive D & C Green No. 5 may be overturned by this court only if that decision was arbitrary and capricious, an abuse of discretion, or not in accordance with the law. 5 U.S.C. § 706(2)(A). The FDA's interpretation of the Food, Drug, and Cosmetic Act is entitled to considerable deference. *See, e.g., Hill v. Tennessee Valley Authority,* 549 F.2d 1064, 1070 (6th Cir.1977), *aff'd.,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). Even when there "is more than one reasonable interpretation of this . . . [Act], the court should follow the interpretation urged by the FDA." *United States v. Colahan,* 635 F.2d 564, 567–68 (6th Cir.1980), *cert. denied,* 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981) (citations omitted).

■ We affirm the judgment of the Food and Drug Administration. Petitioner's arguments are found to be without merit. The FDA's finding that the Delaney Clause is inapplicable to the instant case because D & C Green No. 5 does not cause cancer in humans is in accordance with the law. In its final order, the FDA stated its rationale for its conclusion, and it was fully mindful of the Delaney Clause in making its decision:

[T]he Agency does not believe that it is disregarding the Delaney Clause. In drafting the Delaney Clause, Congress implicitly recognized that known carcinogens might be present in color additives as intermediaries or impurities but at levels too low to trigger a response in conventional test systems. Congress appar-

ently concluded that the presence of these intermediaries or impurities at these low levels was acceptable. This legislative judgment accounts for the absence of any requirement in the Delaney Clause that the impurities and intermediaries in a color additive, rather than the additive as a whole, be tested or otherwise evaluated for safety. Thus, Congress drew a rough, quantitative distinction between a color additive that is deemed unsafe under the Delaney Clause because it causes cancer, and an additive that is not subject to the Delaney Clause because it does not cause cancer even though one of its constituents does. FDA's decision on D & C Green No. 5 is consistent with this distinction.

47 Fed.Reg. 49678 (1982).

This interpretation of the Delaney Clause case is a reasonable one, and it is consistent with its legislative history. Congress distinguished between "pure dye" and its "impurities" in its list of factors for the FDA to consider under the General Safety Clause, but omitted "impurities" as a factor under the Delaney Clause. Although the Agency's regulatory interpretation of the Delaney Clause contains the words, "color additive *including its components*," it is clear that this regulation was aimed only at those additives containing impurities that produced cancer when tested together:

> [T]he Commissioner shall determine whether, based on the judgment of appropriately qualified scientists [from the results of appropriate tests], cancer has been induced and whether the color additive, including its components or impurities, was the causative substance. If it is his judgment that the data do not establish these facts, the cancer clause [Delaney Clause] is not applicable; and if the data as a whole establish that the color additive will be safe under the conditions that can be specified in the applicable regulation, it may be listed for such use.

21 C.F.R. § 70.50 (emphasis added).

Since in the instant case it was determined by the FDA that D & C Green No. 5, after testing as a whole, did not cause can-cer in test animals, under the plain language of the Delaney Clause and the FDA's interpretation of that Clause, the FDA was not prohibited from permanently listing D & C Green No. 5.

The FDA's conclusion that the risk levels ascertained after testing D & C Green No. 5 by isolating p-toluidine were so low as to preclude a reasonable harm from exposure to the additive, within the meaning of the General Safety Clause, is also in accordance with the law. Petitioner's assertion that the FDA has no discretion to determine that D & C Green No. 5 is safe for its intended use because it contains p-toluidine is without merit. This finding is consistent with the holding in *Monsanto v. Kennedy*, 613 F.2d 947 (D.C.Cir.1979). That case involved an impurity, found to produce adverse results in test animals, present in the substance used to make beverage containers, which migrated from the container to the beverage. In discussing whether that impurity was a food additive, the court observed: "[T]he Commissioner may determine based on the evidence before him that the level of migration into food of a particular chemical is so negligible as to present no public health or safety concerns, even to assure a wide margin of safety. This authority derives from the administration discretion, inherent in the statutory scheme, to deal appropriately with *de minimis* situations." *Id.* at 955 (see n. 26 at 995 for list of case authority supporting the court's observation.)

We find this determination by the *Monsanto* court persuasive and relevant to the particular facts of the instant case. We agree with the FDA's conclusion that since it "has discretion to find that low-level migration into food of substances in indirect additives is so insignificant as to present no public health or safety concern . . . it can make a similar finding about a carcinogenic constituent or impurity that is present in a color additive." 47 Fed.Reg. 24280 (1982). Accordingly, we hold that the FDA did not abuse its discretion under the General Safety Clause in determining that the presence of p-toluidine in D & C Green No. 5 created

no reasonable risk of harm to individuals exposed to the color additive.

The decision of the FDA to permanently list D & C Green No. 5 is hereby AFFIRMED.