Stewart A. TAYLOR, d/b/a Taylor Cutlery Mfg. Co., Plaintiff–Appellee,

v.

UNITED STATES of America, et al., Defendants–Appellants.

No. 87–5014.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 15, 1987.

Decided June 6, 1988.

John W. Gill, Jr., U.S. Atty., Greeneville, Tenn., J. Edgar Schmutzer, Leonard Schaitman, Jeffrica J. Jenkins (argued), U.S. Dept. of Justice, Civil Div. Appellate Staff, Washington, D.C., for defendants-appellants.

James R. Shipley, Kingsport, Tenn., Stephen Halbrook (argued), Fairfax, Va., for plaintiff-appellee.

Before JONES, WELLFORD, and BOGGS, Circuit Judges.

WELLFORD, Circuit Judge.

The United States of America and two Customs Service officers, John T. Simpson and Burns O'Brien ("appellants"), appeal the district court's decision that certain knives imported into this country by appellee, Stewart A. Taylor, d/b/a Taylor Cutlery Manufacturing Company ("Taylor"), and seized by the United States Customs Service, are not switchblade knives within the meaning of 15 U.S.C. § 1241(b) and 19 C.F.R. § 1295(a)(1). The district court's order enjoined appellants from seizing future importations of these knives described as Balisong knives made in the Philippines. Appellants had determined that the Balisong knives at issue in this case were switchblade knives and prohibited from importation.

Taylor asked the court to declare that the Balisong or "butterfly" knives which he had imported and were later seized by U.S. Customs were not switchblade knives [1] within the meaning of the law and regulations heretofore recited and to enjoin future seizures of these knives.

Among other things, the district court described a Balisong knife as "basically a folding knife with a split handle." It went on to set out its prime use: "[w]hile the exotic knife has some utilitarian use, it is most often associated with the martial arts and with combat ... [and is] potentially dangerous, lethal...." Citing another dis-

---

1. The Switchblade Knife Act defines a switchblade knife at 15 U.S.C. § 1241(b):

The term 'switchblade knife' means any knife having a blade which opens automatically—
(1) by hand pressure applied to a button or other device in the handle of the knife, or

(2) by operation of inertia, gravity, or both Regulations at 19 C.F.R. § 12.95(a) contains essentially the same descriptive language.

trict court decision involving the same issue, *Precise Imports Corp. v. Kelly,* 378 F.2d 1014 (2d Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967) (upholding a seizure of certain knives), the district court described it as of "minimal value" and distinguished another "seminal case interpreting the Act", *United States v. 1,044 Balisong Knives,* No. 70–110 (D.Ore. Sept. 28, 1970) (refusing to support seizure). The district court concluded that "congress intended to prohibit knives that opened automatically, ready for instant use ... [and] was not concerned with whether the knife's blade would merely be exposed by gravity", ... [it] intended 'open' to mean 'ready for use.'" The district court then decided that Balisong knives "do not open automatically by force of gravity or inertia" and had no button or other device automatically to open the knife, and therefore did not come within the meaning of the law or regulation in question. Defendants were then enjoined from "seizing future importation of Balisong knives" and directed to release the knives seized from Taylor.

The government moved to limit the injunction granted to "seizures from the named plaintiff and regarding only knives essentially the same as those which were the subject of this lawsuit," and at the same time filed the following notice of appeal:

Notice is hereby given that the United States of America and John T. Simpson and Burns O'Brien, defendants in the above-named action, hereby appeal to the United States Court of Appeals for the Sixth Circuit from that portion of the order of November 5, 1986, which enjoins the United States from seizing 'Balisong' or 'butterfly' knives from importers not a party to this action or the seizure from plaintiff of such generically described knives which may factually differ from the knives that were the subject of this lawsuit.

Taylor opposed the motion and then asked for financial remuneration for the seizure and continued holding by the government of the knives in dispute. Sixty-one days after the notice of appeal, the district court denied the motion to modify the injunction.

## JURISDICTION UNDER NOTICE OF APPEAL

Appellants' notice of appeal specified only that portion of the district court's order which enjoined them with respect to importers not a party to this action or knives which were not the subject of this lawsuit. In their brief, however, appellants submit the entire judgment to this court for review. Appellants argue that they are not precluded from appealing the entire judgment by the limited scope of their notice of appeal because they contend that its wording is merely descriptive, relying upon *Wade v. Mississippi Cooperative Extension Service,* 528 F.2d 508, 511 n. 3 (5th Cir.1976), and *Elfman Motors, Inc. v. Chrysler Corp.,* 567 F.2d 1252, 1254 (3d Cir.1977). Appellants' designation of only a specific portion of the judgment in their notice of appeal presents us with a question of jurisdiction concerning the nature and extent of this appeal. Taylor has responded to appellants' brief in full, and has not challenged the sufficiency of the notice of appeal to the entire judgment, nor has he contended that he has been prejudiced in any way. The parties addressed the entire judgment at oral argument until questioned by this court about the language of the notice of appeal heretofore set out.

We have recently discussed a somewhat similar situation in *McLaurin v. Fischer,* 768 F.2d 98 (6th Cir.1985). In that case, plaintiff brought federal age discrimination and other constitutional claims in respect to his termination from employment by defendant and also coupled with the federal causes of action, state claims of similar import together with a tortious interference claim. In appealing from an adverse judgment, the plaintiff's notice of appeal referred "solely to the district court's order which embodies the jury's verdict on the federal age discrimination claim; neither the directed verdict nor the dismissal of the state law claims are mentioned." *Id.* at 101. While acknowledging that "[g]enerally a notice of appeal must 'designate the judgment order or other part thereof' from

which the party appeals," we held that "an appeal from a final judgment draws into question all prior non-final rulings and orders." *Id.* at 101.[2]

Despite the ambivalent statements reflected in *McLaurin v. Fischer,* we decided that even in the face of appellee's objection to considering the other decisions rendered which were not specifically designated in the notice of appeal, there was "effectively preserved for review all of the district court's nonfinal rulings and orders, including the directed verdict and state law claim rulings" because the deficiency was considered a technical error and therefore harmless since appellee "failed to demonstrate any prejudice due to the alleged error." *Id.* at 102. The question of our jurisdiction to consider an appeal from all of Judge Hull's judgment is not free from doubt. However, appellee was evidently not misled, as he indicated no prejudice by responding fully to all issues raised and briefed in the government's brief on appeal. On the authority of *McLaurin v. Fischer, supra,* a stronger case for appellee on its facts than the instant case, we conclude that we have jurisdiction to consider the declaratory judgment aspect of this case as well as the breadth of the injunctive order.

## DECLARATORY JUDGMENT

The central issue in this case is whether the Balisong knives seized by appellants from Taylor have a blade "which opens automatically ... by operation of inertia, gravity or both" so as to fall within the definition of switchblade knives set forth in 15 U.S.C. § 1241(b) and 19 C.F.R. § 1295(a)(1). Resolution of the issue requires a construction of the statutory language which is a question of law subject to *de novo* review by this court. While factual considerations concerning the specific knife in question were necessary to the district court's interpretation and application of the statute, we characterize this basic issue as one of law. Our goal in

statutory construction is to effectuate legislative intent as reflected in the language of the statute itself and in its legislative history. *In Re Arnett,* 731 F.2d 358, 360–61 (6th Cir.1984).

Unless it is arbitrary and capricious or inconsistent with the statute or its underlying policy, the construction of the statute by the agency charged with its administration is entitled to substantial deference. *Young v. Community Nutrition Institute,* 476 U.S. 974, 981, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986); *Chemical Mfg. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125–26, 105 S.Ct. 1102, 1107–08, 84 L.Ed.2d 90 (1985); *University of Cincinnati v. Heckler,* 733 F.2d 1171, 1173–74 (6th Cir.1984). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed. 2d 694 (1984). The reviewing court need not find that the agency interpretation is the only interpretation, but must only ascertain whether the agency interpretation is rational. If the agency's construction or interpretation is a reasonable one, the court should give deference to it. *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11; *Young,* 476 U.S. at 981, 106 S.Ct. at 2364; *State of Tennessee v. Herrington,* 806 F.2d 642, 652 (6th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987); *Scott v. Food and Drug Administration,* 728 F.2d 322, 324 (6th Cir.1984).

Taylor contends that the decision of customs officials to seize his Balisong knives was arbitrary and capricious and contrary to the plain language of the statute. Taylor focuses on the words, "open automatically," contained within the statute and argues that those words mean "ready for use." Appellee maintains that the statutory language does not encompass the Balisong knives which require hand manipu-

---

**2.** We also stated in *McLaurin,* at p. 102, however, that "[i]f an appellant ... chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issue may be raised on appeal."

lation in addition to gravity to be "ready for use." Taylor cites to various portions of the legislative history wherein the legislative discussions focused upon how the knives under consideration opened and locked automatically by virtue of an automatic mechanism. *Switch Blade Knives: Hearings Before the Senate Comm. on Interstate and Foreign Commerce*, 85th Cong., 2d Sess. 7 (1958); 104 Cong. Rec. 15,709 (July 31, 1958). Further, Taylor persuaded the district court to believe and maintains on appeal that the Customs Service's interpretation of its regulation and the statute should not be accorded deference because its rulings have vacillated on Balisong type knives and whether the statute applies to them.

Appellants respond that Customs Service interpretation of the statutory language and the regulation is both rational and consistent with the underlying policy of the statute. The government argues that Congress intended to address the problem of the use of quick-opening, easily concealed knives frequently used for criminal purposes. Appellants contend that "open automatically" in the context of the statute and in light of its underlying policy simply means that the knife's blade is "exposed" automatically by gravity, inertia or both. Appellants further contend that the readily-performed motions required to make the Balisong knife usable after its blade is exposed do not take the Balisong knife at issue in this case from the purview of the statute. While the Customs Service has, over the course of the years, proceeded from a position of total prohibition of Balisong knives to a case-by-case adjudication of their importability, the appellants deny any essential departure from a position that these knives may not legally be imported. The agency's rulings over time in our view do not support the district court's conclusion that the Customs Service has vacillated between a position of total prohibition to a position of no prohibition whatsoever.

The focus of the district court's concern was on a ruling by the Customs Service on September 28, 1982, which noted that the Customs Service had consistently refused entry to Balisong knives under TD 71–133

of July 14, 1971. The September 28, 1982 ruling goes on to note that the Customs Service had examined many samples of the Balisong knives and was of the opinion that the Balisong design "of itself does not warrant automatic prohibition under the Switch Blade Knife Act." The ruling indicates, however, that Balisong knives would be subjected to the same scrutiny as were all pocket knives to ensure that importation did not violate the Switch Blade Knife Act.

■ Close examination of the language of this 1982 ruling makes it clear that the Customs Service was not relinquishing its control over the importation of Balisong knives but was willing to allow certain kinds of those knives to enter this country on a case-by-case basis so long as their importation did not violate the Switch Blade Knife Act. We conclude that the decision to deny importation of Taylor's Balisong knives in 1985 was not essentially inconsistent with the September 28, 1982 ruling and that it was not arbitrary or capricious. It is therefore entitled to considerable deference if consistent with the statutory language and the underlying policy of the law and regulation at issue in this case.

■ In support of their argument that the seizure of Taylor's Balisong knives was based upon a rational interpretation, appellants rely on the legislative purpose of the statute, and cite to *Precise Imports v. Kelly*, 378 F.2d 1014 (2d Cir.), *cert. denied*, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967), and *United States v. Murphree*, 783 F.2d 605, 609–10 (6th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986), as support for their position. While we agree that the legislative history is in accord with the government's interpretation of the switchblade knife definition set forth, we cannot say that *Precise Imports* and *Murphree* are controlling.

*Precise Imports* and *Murphree* do not contradict the reasoning advanced by the appellants but they involved knives which could be altered to open automatically. This is not the situation with Taylor's Balisong knives. Barring Taylor's knives came about by reason of a permissible interpretation of the Customs Service regulation which tracks in every essential the lan-

guage of the statute. There is sufficient indication in the legislative history that the intent was to exclude these martial arts weapons, which even the district court admitted "can be opened very rapidly, perhaps in less than 5 seconds ... [and] are potentially dangerous, lethal weapons." *See United States v. Coalition to Preserve the Integrity of American Trademarks,* — U.S. —, —, 108 S.Ct. 950, 955, 99 L.Ed.2d 151 (1988). "Automatically" as used in the statute does not necessarily mean simply by operation of some inanimate connected force such as the spring in a literal switchblade. For example, the type of gravity or "flick" knife which is indisputably within the statute requires some human manipulation in order to create or unleash the force of "gravity" or "inertia" which makes the opening "automatic." While it may also be reasonable to interpret the legislative history and the language of the statute not to include these Balisong knives in question because they require some additional hand movements to be ready for use, we cannot set aside the Customs Service's equally rational interpretation of the statute and its regulation issued thereunder.

We agree with the district judge that the only other federal court case to deal with the interpretation of the Switch Blade Knife Act, *United States v. 1,044 Balisong Knives,* No. 70–110 (D. Ore. Sept. 28, 1970), is not instructive because of the lack of factual findings and because it appears to be a result of the court's concern that the Customs Service had retroactively applied its ruling.

We find the case to be close but Taylor's own bulletin describing this knife in controversy, only one of numerous Balisong shapes and designs, as a "dagger intended for use in a fight"; and one which greatly enhanced the Philippine martial arts makes clear its intended and principal use as a kind of switchblade. This bulletin described and illustrates a number of "combat ready holding variations," emphasizing "dexterity" and "speed" in its use, so that it "is ready for action in under five seconds." (One technique described is "the silent drop" through use of a "latch" which is released; another sets out "the Manila way" whereby upon practice "the blade should open fast from any hand held position.") The government indicated that had the knives been "designed with a single-edge blade and were primarily used for utilitarian purposes" rather than "double-edged stiletto-style blades" they would have been admitted.

Under the peculiar circumstances here involved, we direct that the knives seized and those declared forfeited be made available for a reasonable period to appellee for the opportunity to alter the knives to meet the description which Customs would deem to be utilitarian and thus importable, if practicable, and/or to permit appellee to petition for relief from the severe impact of the seizure and forfeiture involved through the administrative process described in the Customs Service letter to Taylor Cutlery of May 10, 1985.

For the reasons stated, we REVERSE the judgment of the district court and set aside its injunctive order under the condition that appellee be afforded an opportunity to petition appellants for relief from the forfeitures and seizures involved in this controversy.