NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0213n.06
Filed: March 19, 2009

Nos. 08-3420; 08-3421

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WILLIAM SCHRAMM, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT |
| | ) | FOR THE NORTHERN DISTRICT |
| RAY LaHOOD, | ) | OF OHIO |
| Secretary, Dept. of Transportation, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: **McKEAGUE** and **GRIFFIN**, Circuit Judges; **WEBER**, Senior District Judge.[*]

**PER CURIAM.**

**I.**

Plaintiff-Appellant William Schramm ("Schramm") filed two retaliation cases under Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., against the Secretary of the

_____

[*]The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

1

Department of Transportation ("Secretary"). Although the two cases were consolidated by the district court, they retained their separate case numbers and documents continued to be filed separately in the two cases. The district court granted summary judgment in favor of the Secretary in both cases. Schramm filed a notice of appeal in each case, and this court consolidated the two appeals. For the reasons set forth below, we find that the notice of appeal filed in Case No. 08-3420 violates Fed. R. App. P. 3, and we **DISMISS** the appeal for lack of subject matter jurisdiction. We **AFFIRM** the decision of the district court granting summary judgment in favor of the Secretary in Case No. 08-3421.

## II.

Schramm was employed by the Federal Aviation Administration ("FAA") in the 1990's as an air traffic controller at the Toledo Express Airport in Toledo, Ohio. In November of 1998, he went on administrative leave from his position, and the following year he retired from the FAA on a disability pension. In May of 2000, Schramm filed an employment discrimination action in federal court against the Secretary, claiming he had been the victim of sex discrimination and retaliation during his employment with the FAA. Among the individuals he named as wrongdoers in the suit was James Blumberg ("Blumberg"), an air traffic control specialist supervisor. Summary judgment was granted in favor of the Secretary and the decision was affirmed on appeal on July 14, 2004.

While Schramm's employment discrimination lawsuit was pending, an incident occurred which led to the filing of the first lawsuit that forms the basis for the present appeal (hereinafter referred to as the "retaliatory assault case"). The facts surrounding that incident, construed in the light most favorable to Schramm, are as follows: On December 18, 2002, a process server retained by Schramm, William Boden ("Boden"), went to the Toledo Express Airport to serve subpoenas on

2

witnesses in the pending discrimination lawsuit. Boden met with Mark Fischer ("Fischer"), the chief of the airport security personnel, to enlist his assistance in serving four subpoenas on FAA employees working in the air traffic control tower, a restricted area within the terminal building to which members of the public do not have access. Fischer advised Boden to proceed to the tower entrance, where an FAA employee would either grant him admittance or accept the subpoenas. After airport officials decided to deny Boden access to the control tower, Boden was allowed access to a landing area leading to the tower, through which all employees would have to pass when going to or from the tower.

At some point, Boden called Schramm and requested that he come to the airport and identify the individuals to be served as they exited the tower. On Boden's advice, Schramm maintained a distance of 20 feet from the individuals to be served, including Blumberg. Schramm identified Blumberg as he left the tower. Boden pressed a subpoena to Blumberg's shoulder and informed him that he had been served. Blumberg, whose face and body language reflected rage, swung his arm back to avoid contact with Boden and let the subpoena fall to the ground. On the advice of Boden, Schramm remained in the terminal for a period of time after Blumberg left in order to lessen the chance of encountering Blumberg in the parking lot. Schramm then exited through the main doors of the lobby.

As Schramm made his way to his car, Blumberg pulled around the corner in his pick-up truck and drove alongside Schramm. Blumberg verbally abused Schramm and made comments such as "they were not through with him" and "they would take care of him at trial." Schramm shouted back at Blumberg that he had been served and walked away, after which Blumberg shifted his truck into reverse, drove at Schramm at a high rate of speed, and swung around at the last possible second.

3

Blumberg continued to follow Schramm and verbally abuse him as Schramm walked to the Port Authority Police Station to file a complaint.

On March 20, 2003, Schramm filed a complaint of retaliation with the Equal Employment Opportunity Commission ("EEOC"). Shortly before he did so, a series of events began to unfold which culminated in the filing of Schramm's second retaliation lawsuit (hereinafter the "medical disqualification case"). In February of 2003, after having been on medical disability retirement for taking Zoloft to treat Anxiety Depressive Disorder, Schramm applied to be an air traffic controller for Midwest Air Traffic Controllers ("Midwest Air"), a company that contracts with the FAA to handle air traffic at smaller facilities. On February 5, 2003, he underwent a standard FAA medical examination conducted by Dr. John Culberson. Schramm informed Dr. Culberson that he had not taken Zoloft in over 90 days, which Dr. Culberson noted on his medical exam. Dr. Culberson issued him a Class II medical certification and transmitted the exam to the appropriate division of the FAA for review. Schramm then went to work as an air traffic controller at the airport in Jackson, Michigan.

In August of 2003, Schramm obtained a position as a contract controller for the United States Department of Defense as part of Operation Enduring Freedom. Because his deployment would last a year, he underwent another standard FAA examination, which was conducted by Gary L. Lynd, D.O. Dr. Lynd, like Dr. Culberson, was an Aviation Medical Examiner ("AME"), who conducted medical examinations on a contract basis for the FAA. Schramm informed Dr. Lynd that he was no longer being treated for anxiety/depression and that he had not taken Zoloft since 2002. Schramm received a Class II medical certificate on August 25, 2003. He was then deployed to Uzbekistan.

On November 7, 2003, Schramm filed his complaint in federal court in the retaliatory assault

4

case, Case No. 3:03cv7655. He claimed that the Secretary had retaliated against him for participating in an activity protected by Title VII, specifically, that Blumberg had assaulted him in retaliation for litigating his sex discrimination suit and the FAA was vicariously liable for Blumberg's conduct as it had actual and constructive knowledge of that conduct. Schramm served a copy of the summons and complaint on the Secretary on or about December 1, 2003.

On December 30, 2003, Dr. Nestor B. Kowalsky sent Schramm a letter notifying him that he was not qualified for the Class II medical certificates issued to him on February 5, 2003, and August 23, 2003.[1] The letter informed Schramm that a review of his applications and reports of physical examinations of August 25, 2003 and February 5, 2003, disclosed that he did not meet the governing medical standards and that he was not qualified for the airman medical certificate issued to him by the AME "due to history of Anxiety Disorder and/or Depressive Disorder and use of disqualifying medication." As a result of this action, Schramm was forced to terminate his position in Uzbekistan and return to the United States, and his employment with Midwest Air was terminated. Only after Schramm underwent yet another medical examination in January of 2005 was he re-issued a Class II medical certificate by the FAA. Midwest Air did not rehire him until May of 2005.

Plaintiff filed a complaint arising from his medical disqualification on December 28, 2004 (Case No. 3:04cv7782), claiming that the FAA's December 30, 2003 decision denying his Class II medical certification was in retaliation for engaging in activity protected by Title VII, specifically, filing the retaliatory assault case against the Secretary on November 7, 2003.

**III.**

The district court issued a decision on February 11, 2008, granting summary judgment in favor

---

[1]The latter certificate was actually issued on August 25, 2003.

5

of the Secretary in the retaliatory assault case on the ground that Schramm could not show that he was engaged in a protected activity, and he therefore could not establish a prima facie case of retaliation. The district court determined that a plaintiff in a civil lawsuit is normally not permitted to be involved in the subpoena process in any respect pursuant to Fed. R. Civ. P. 45(b)(1), which at the time of the court's decision provided that "A subpoena may be served by any person who is not a party and is not less than 18 years of age." The district court found that Schramm could have applied to the court for an order allowing him to assist the process server because of the unusual circumstances, but he did not do so. The court indicated that Schramm had engaged in unreasonable conduct and had flaunted federal aviation policy and the federal rules by identifying for Boden the individuals to be served.

The February 11, 2008 order granting the Secretary's motion for summary judgment and dismissing Schramm's complaint with prejudice in Case No. 3:03cv7655, the retaliatory assault case, was entered in the medical disqualification case, Case No. 3:04cv7782, on that same date. The order did not, however, resolve any part of the medical disqualification case, which remained pending. On March 25, 2008, the district court issued an opinion and order in the medical disqualification case which disposed of the case on the merits. In its opinion, the district court acknowledged that the Secretary did not dispute that the first and third prongs of Schramm's prima facie case were met for summary judgment purposes, i.e., Schramm had engaged in protected activity by filing the first Title VII retaliation lawsuit, and the FAA had taken an adverse employment action against Schramm by finding that he was disqualified from holding a Class II airman's medical certificate. The court also found that the causation prong was satisfied for purposes of the prima facie case in view of the brief period of time - only 53 days - between the filing of the Title VII lawsuit and Schramm's medical disqualification. The court determined, however, that the knowledge element was not satisfied.

Specifically, the district court determined that the Flight Surgeon's Office of the FAA did not know of Schramm's lawsuit when it issued the medical disqualification letter.

**IV.**

Following dismissal of the medical disqualification case, on April 1, 2008, Schramm filed separate notices of appeal in the two retaliation cases. In each notice of appeal, Schramm states that he is appealing from the "Summary Judgment and Termination entered in this action on the 11th day of February, 2008." The only entry dated February 11, 2008, is the opinion and order that disposed of the retaliatory assault case. Schramm failed to designate the March 25, 2008 order that disposed of the medical disqualification case in either notice of appeal, even though he challenged the order in his appellate briefs and the Secretary responded to his arguments.

Although the Secretary did not bring Schramm's omission to our attention, we have a duty to consider sua sponte whether appellate jurisdiction is properly invoked. *See Mattingly v. Farmers State Bank*, 153 F.3d 336, 336 (6th Cir. 1998). Accordingly, at oral argument we raised the issue of whether there is a jurisdictional defect in the notice of appeal filed in the medical disqualification case. Following oral argument, the parties submitted briefs on the issue. Schramm alleges that he mistakenly interpreted the February 11, 2008 order as dismissing both retaliation cases, and he misunderstood the March 25, 2008 order to be an additional opinion of the district court which was intended to supplement its earlier order. Schramm explains that this is why he did not mention the March 25, 2008 order in his notice of appeal. He claims that despite his omission, this court has jurisdiction to review the order because his subsequent filings and briefs clearly demonstrate that it was his intent to appeal the March 25, 2008 order and the Secretary understood that such was his intent. Schramm asserts that he stated the substantive issues he intended to address on appeal of the

7

medical disqualification case in the Statement of Issues and Parties served on the Secretary on April 21, 2008; he contested the district court's decision to dismiss the medical disqualification case in his appellate brief; and the Secretary responded in his brief to the issues Schramm had raised concerning the retaliatory medical disqualification. Schramm claims that he has provided the functional equivalent of what Fed. R. App. P. 3 requires, so this court has jurisdiction to review dismissal of the medical disqualification case.

The Secretary argues that Schramm's failure to properly identify the order being appealed in the medical disqualification case violates Fed. R. App. P. 3(c)(1) and deprives this court of subject matter jurisdiction over the appeal. The Secretary concedes that he was not harmed by the error but argues that the court cannot employ a harmless error or waiver analysis when evaluating defects that go to subject matter jurisdiction.

Fed. R. App. P. 3(c)(1) states that the notice of appeal must

(A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X";
(B) designate the judgment, order, or part thereof being appealed; and
(C) name the court to which the appeal is taken.

Rule 3(c)'s requirements serve two functions:

They address fairness and due process concerns by ensuring that the filing provides sufficient notice to other parties and the courts. And they address administrative concerns by avoiding inconsistency, vagueness and an unnecessary multiplication of litigation caused by uncertainty over who has appealed and from what judgment. Uniting these considerations is notice - notice to the opposing party and the court that an appeal of a given order has been taken and that it has been taken to a certain court. An aspiring notice of appeal thus must specify not just any party but the party . . . taking the appeal; it must designate not just any court but the court to which the appeal is taken; and it must designate not just any order but the . . . order [or orders] . . . being appealed.

8

*Isert v. Ford Motor Co.*, 461 F.3d 756, 758-59 (6th Cir. 2006) (internal quotations and citations omitted).

Rule 3 imposes jurisdictional requirements that may not be waived, even for good cause shown. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988); *Caudill v. Hollan,* 431 F.3d 900, 907 (6th Cir. 2005). Nonetheless, despite the mandatory nature of the Rule, its requirements should be liberally construed and applied. *Caudill*, 431 F.3d at 907. "[F]unctional rather than formalistic compliance is all that is required." *Isert*, 461 F.3d at 759. "[I]mperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court." *Becker v. Montgomery*, 532 U.S. 757, 767 (2001); *see also Sanabria v. United States*, 437 U.S. 54, 68 n.21 (1978) ("A mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced.")

Although we have loosened the requirement that the notice of appeal name the court to which the appeal is taken, *see Dillon v. United States*, 184 F.3d 556, 558 (6th Cir. 1999) (en banc), we have declined to similarly loosen the requirement that the notice of appeal "designate the judgment, order, or part thereof being appealed." *United States v. Glover*, 242 F.3d 333, 337 (6th Cir. 2001). We reasoned in *Glover* that to opt for a more relaxed approach in this regard would "too frequently require this Court to sort through a morass of objective and subjective factors to meditate upon and divine the party's intended appellate targets" from among any number of potentially appealable issues that may have arisen prior to an appeal. *Id*. Thus, where an appellant "chooses to designate specific determinations in its notice of appeal, only those determinations may be raised on appeal." *Crawford v. Roane*, 53 F.3d 750, 752 (6th Cir. 1995); *see also United States v. Universal Mgmt. Servs., Inc.,*

9

*Corp.*, 191 F.3d 750, 756 (6th Cir. 1999) (appellants were foreclosed from asking the court to review issues rejected in the district court's denial of their motion for reconsideration where their notice of appeal indicated they were appealing only the district court's order on motions for summary judgment).

Schramm cites several of our prior decisions in support of his position that the notice of appeal filed in the medical disqualification case provides the functional equivalent of what Rule 3 requires and we therefore have jurisdiction to review the dismissal of the case. First, he cites *Crawford*, 53 F.3d at 750, where we considered the district court's denial of the plaintiffs' motion for leave to amend, even though the plaintiffs stated in the notice of appeal that they sought review of the district court's judgment denying their motion for summary judgment and granting one defendant's motion for summary judgment. Second, Schramm cites *Caudill*, 431 F.3d at 900, where the notice of appeal stated that the plaintiffs were appealing the order that directed the entry of final judgment but did not specifically mention the judgment itself and did not refer to an earlier order that dismissed claims against one of the defendants in her individual capacity. We interpreted the appeal from the order directing entry of final judgment as tantamount to an appeal from the final judgment itself, and we found we had jurisdiction over the appeal from the order on the individual liability claims pursuant to our rule that "we will entertain arguments on all objections and asserted errors prior to the final disposition of a case if a party indicates in its notice of appeal that it appeals either the final judgment or the final order in the case." *Id*. at 906. Third, Schramm cites *Taylor v. United States*, 848 F.2d 715 (6th Cir. 1988), where we found we had jurisdiction to consider the declaratory judgment aspect of the case as well as the breadth of the injunctive relief ordered as part of the same judgment, even though the notice of appeal designated only the injunctive aspect of the case.

10

Our prior decisions on which Schramm relies do not support a finding that we have jurisdiction over the notice of appeal filed in the medical disqualification case. In each of these previous cases, the appellant designated the final judgment or order in the notice of appeal and sought to appeal either an order that preceded the final judgment or a portion of the final judgment. This case is distinguishable in that Schramm seeks to appeal a final order that he did not designate in the notice of appeal, and the order that he did designate in the notice was a previously-issued order which disposed of a factually distinct, albeit consolidated, case. There is no exception to the rule that the notice of appeal must designate "the judgment, order, or part thereof being appealed" in a situation such as this.

Schramm also cites two cases from other circuits in support of his argument that a party should be permitted to pursue an appeal from a specific judgment when the intent to do so can be fairly inferred from the appellant's notice and subsequent filings and when the opposing party is not misled by the mistake. *See Messina v. Krakower*, 439 F.3d 755 (D.C. Cir. 2006); *Shapiro ex rel. Shapiro v. Paradise Valley Unified School Dist. No. 69*, 374 F.3d 857 (9th Cir. 2004). Insofar as these decisions allow the court to look beyond the notice of appeal to discern an appellant's intent and determine whether the functional requirements of Rule 3 are fulfilled, they are not consistent with the case law of this circuit and Schramm's reliance on them is misplaced. Our precedents do not allow us to examine the circumstances surrounding an appeal in an effort to determine whether an appellant has made a mistake in designating the order he wishes to appeal. They instead require that we hold firm to the requirements of Rule 3(c)(1) and look to the notice of appeal to ascertain the judgments and orders the notice encompasses.

Consistent with our prior decisions, we conclude that the defect in the notice of appeal is

11

jurisdictional and precludes us from entertaining the appeal filed in the medical disqualification case. Schramm concedes that the notice misidentified the order being appealed and designated the February 11, 2008 order, which resolved only the retaliatory assault case. The appeal from that order does not encompass orders issued in the medical disqualification case after February 11, 2008. It matters not that Schramm's intent to appeal the March 25, 2008 order is obvious from his appellate briefs and that the Secretary was not prejudiced by his mistake in identifying the wrong order. What matters is that Schramm's intent to appeal the March 25, 2008 order is not discernible from the notice of appeal itself. To the contrary, it appears from the notice that Schramm intended to appeal only the order that granted summary judgment in the retaliatory assault case but which was entered into the record in both that case and the medical disqualification case. Thus, despite the harsh result that a strict application of Rule 3(c)(1) yields in this case, Schramm's failure to designate the March 25, 2008 order in his notice of appeal filed in Case No. 3:04cv7782 compels us to conclude that we lack jurisdiction over the district court's order of that date deciding that Schramm could not establish a retaliation claim under Title VII stemming from his medical disqualification.

## V.

We turn then to whether the district court erred by granting summary judgment in favor of the Secretary in the retaliatory assault case and dismissing that lawsuit.

This court reviews a district court's grant of summary judgment *de novo*. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" dispute is one that would permit a reasonable jury to return a verdict in favor

12

of the non-moving party. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). A factual dispute involves a "material" fact only if its resolution could affect the outcome of the litigation under the applicable law. *Id.* At the summary judgment stage, the district court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

> Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), provides that
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in activity protected under the statute; (2) the exercise of his civil rights was known by defendant; (3) defendant thereafter took an adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) a causal connection exists between the protected activity and the adverse employment action or harassment. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000).

In *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), the United States Supreme Court clarified that the scope of Title VII's anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. The Supreme Court fleshed out the provision's standard, explaining that the anti-retaliation provision protects an individual not from all retaliation, but only from retaliation that causes injury or harm. *Id.* The challenged action must be one that a reasonable employee would have found to be "materially adverse," which in the context

13

of a retaliation claim "means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. at 68 (citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The anti-retaliation provision's standard is phrased in terms of "the reactions of a *reasonable* employee" because "the provision's standard for judging harm must be objective." *Id*. The standard is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id*. at 69.

The anti-retaliation standard does not require consideration of the underlying conduct that prompted the filing of the Title VII complaint. *Id*. Instead, "the standard is tied to the challenged retaliatory act . . . ." *Id*. The Supreme Court in *Burlington* explained that "[b]y focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id*. at 69-70.

Schramm claims that the district court committed reversible error by holding that he went beyond the bounds of protected conduct and violated Fed. R. Civ. P. 45(b)(1) by identifying Blumberg to the process server, Boden. The Secretary argues that Schramm's conduct violated Rule 45(b)(1) because Schramm was involved in serving a subpoena. The Secretary further argues that Schramm cannot establish a retaliation claim because Blumberg's conduct is not the type of conduct that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." The Secretary contends that a reasonable plaintiff would not serve a trial subpoena and therefore would not fear that he may be assaulted by an employee of a defendant during the subpoena process. Finally, the Secretary denies that he can be held vicariously liable under Title VII for Blumberg's

14

conduct.

The district court's determination that Schramm's conduct in assisting the process server was not protected because it violated Rule 45(b)(1) was erroneous. Schramm complied with the Rule by enlisting the services of Boden to serve the subpoenas. Schramm came to the airport at Boden's request not to serve the subpoenas himself, but only to identify the individuals on whom Boden was to serve the subpoenas. There is nothing in the text of Rule 45(b)(1) that prohibited Schramm from assisting Boden in this manner. Nor is there anything in the Rule that would have alerted Schramm to the need to obtain a court order before he went to Boden's assistance. Schramm did not flaunt the federal rules in any manner by acting as he did and, contrary to the district court's suggestion, his conduct did not invite Blumberg's threatening and belligerent behavior. Because Schramm's act of assisting with the service of subpoenas in his discrimination lawsuit falls within the purview of Title VII's anti-retaliation provision, and because Blumberg's conduct might well deter a reasonable individual from engaging in such activity, Schramm is not precluded from establishing that he engaged in protected conduct.

We therefore turn to the question of whether the Secretary can be held liable for Blumberg's conduct. The Secretary argues that he cannot be held liable because this case does not fall under any of the categories where vicarious liability is traditionally imposed upon an employer. The Secretary contends that Blumberg did not serve the interest of the FAA in any discernible fashion and he was not aided by his supervisory position in carrying out his personal objective. Schramm counters that as his former supervisor, Blumberg was a decision maker who frequently affected the conditions of his working environment and he was therefore a proxy for the FAA when he assaulted Schramm.

We find that the Secretary cannot be held vicariously liable under Title VII for Blumberg's

15

conduct based on the peculiar facts of this case. Schramm had not been employed by the FAA for several years when the subpoena incident occurred, and the analyses that courts typically undertake to determine vicarious liability for a violation of Title VII's anti-retaliation provision simply do not apply to these facts. Blumberg was not Schramm's supervisor when he engaged in the wrongful conduct, and the fact that he had supervised Schramm some years before the subpoena incident is not material to the question of whether Blumberg's personal conduct outside of the workplace can be imputed to the Secretary.[2] The Secretary therefore cannot be held liable for Blumberg's conduct based on his supervisory position with the FAA.

Nor is the imposition of liability proper under the analysis applicable to a situation involving retaliatory conduct by a coworker, pursuant to which an employer will be liable for a coworker's actions if "(1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination, (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances." *See Hawkins v. Anheuser-Busch, Inc*., 517 F.3d 321, 347 (6th Cir. 2008). Blumberg and Schramm cannot be characterized as coworkers at the time of the subpoena incident because they had not worked together for several years.

---

[2]We do not mean to suggest that vicarious liability can never be imposed under Title VII's anti-retaliation provision for conduct that occurs outside the workplace. In the circumstances presented by this case, however, where several years had elapsed between the termination of the plaintiff's employment and the alleged retaliatory action, which had no connection to the workplace, the mere fact that the person who took the action formerly supervised the plaintiff is immaterial for purposes of imposing vicarious liability.

16

Moreover, this is not a situation where the Secretary could have prevented the offending conduct given that Blumberg's actions were spontaneous and occurred in a non-work setting. Finally, Schramm does not allege on appeal that the Secretary condoned, tolerated or encouraged Blumberg's outrageous conduct in any manner.

In short, because Schramm had not been working at the FAA for several years when the subpoena incident occurred, and because the incident was an isolated, unforeseen event which occurred outside of the workplace, there is no basis for holding the Secretary liable under Title VII for Blumberg's actions against Schramm. Instead, given the unique circumstances of this case, Schramm's proper remedy lies against Blumberg under tort law. We therefore affirm the district court's grant of summary judgment in favor of the Secretary in the retaliatory assault case, but we do so on the alternative ground that the Secretary is not vicariously liable for Blumberg's actions. *See Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (appellate court may affirm the district court's dismissal of the plaintiff's claims on any grounds, including those not relied on by the district court).

## VI.

For the reasons set forth above, the appeal filed in the medical disqualification case, No. 08-3420, is **DISMISSED** for lack of jurisdiction. The decision of the district court dismissing the retaliatory assault case, No. 08-3421, is **AFFIRMED**.