[No. A043063. First Dist., Div. Five. June 30, 1989.]

THE PEOPLE ex rel. JEROME J. MAUTNER, as District Attorney, etc., Plaintiff and Appellant, v.
JOHN R. QUATTRONE, Defendant and Respondent.

---

**COUNSEL**

Jerome J. Mautner, District Attorney, and Daryl A. Roberts, Deputy District Attorney, for Plaintiff and Appellant.

William L. Crow for Defendant and Respondent.

---

**OPINION**

**LOW, P. J.**—The District Attorney of Napa County, on behalf of the People of the State of California, unsuccessfully sued, under the Unfair Business Practices Act (Bus. & Prof. Code, § 17200), to bar defendant from selling certain knives, claiming they were illegal switchblades (Pen. Code, § 653k). We hold that the butterfly and "Tekna" knives are prohibited switchblades and reverse the judgment below.

The People brought an action alleging unfair business practices against John R. Quattrone, doing business as Honest John's Sports Emporium, arising out of the sale or offer-for-sale of "Balisong" or butterfly knives and the Tekna sheath-retracting knife. The People alleged these knives were prohibited switchblades, the sale of which constitutes unfair competition. The People sought civil penalties and injunctive relief. (Bus. & Prof. Code, §§ 17204, 17206.) The trial court ruled that the knives were not "switchblade knives" and entered judgment for defendant.

Penal Code section 653k makes it illegal to sell or offer for sale a switchblade knife having a blade over two inches in length. Switchblade is defined as "a knife having the appearance of a pocketknife, and shall include a springblade knife, snap-blade knife, gravity knife or any other similar type knife, the blade or blades of which are two or more inches long and which

can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever." (Pen. Code, § 653k.)

The butterfly knife sold by defendant has a fixed blade over two inches long. When not in use, a two-part handle is folded around the blade as a sheath and is secured by a latch at the base of the knife. To open, the latch is released, allowing the two halves of the sheath to swing down on pivots to form a handle exposing the blade. The handle may be secured manually or closed with the latch.

The Tekna sheath-retracting knife has a fixed blade longer than two inches. A two-part plastic sheath protects the blade. The sheath is spring activated and retracts into the handle when the user pushes a button at the bottom of the handle.

Police Officer Leroy Hart gave a videotaped demonstration of the operation of these knives in court. The officer was able to rapidly open and lock the butterfly knife with one hand using three wrist movements. He needed only a half hour to perfect this technique. The officer testified he has seen others, including children, use the knife in this fashion. The officer also demonstrated the Tekna knife. In one action he depressed the button on the base of the handle using the small finger of one hand, which caused the sheath to retract into the handle, exposing the blade. The officer testified that one must hold the handle of a butterfly knife differently than a regular pocketknife, where one must manually pull the blade out. The butterfly knife has no spring mechanism and does not operate "automatically," as he understood the term. The officer opined that the gold- and black-handled butterfly knives were illegal because you could open them with a flip of the wrist. Defendant presented an expert witness who distinguished the knives from those described in the statute. In his opinion the knives were not prohibited switchblades. Defense counsel argued that the butterfly knives were not covered by the statute because the blades are fixed and are not released automatically, unlike the knives listed in the statute. Also, the subject knives require several intermediate steps to open, unlike a conventional switchblade. Defense counsel also contended the blade does not retract in the Tekna knife and it does not "have the appearance" of a pocketknife because the blade does not fold into the handle.

The district attorney argued that both the butterfly and the Tekna knives are opened "automatically" by a flip of the wrist or a "mechanism," as that term is broadly interpreted, and the statute does not require the blade to move, only that it be "set free from the confinement of the sheath." It was

argued the Tekna knife had the appearance of a pocketknife since it may be carried safely in a pocket or purse.

■ We must give effect to the intent of the Legislature so as to effectuate the purpose of the law. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].) ■ In determining such intent, the court turns first to the words themselves, giving them their ordinary and generally accepted meaning. (*People* v. *Craft* (1986) 41 Cal.3d 554, 559-560 [224 Cal.Rptr. 626, 715 P.2d 585].) The words must be read in light of the legislative objective sought to be achieved, as well as the evil sought to be averted. (*People* v. *Aston* (1985) 39 Cal.3d 481, 489 [216 Cal.Rptr. 771, 703 P.2d 111].) ■ If after such a review the statute is susceptible of two *reasonable* constructions, the one that is more favorable to the defendant will be adopted. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 487-488 [134 Cal.Rptr. 630, 556 P.2d 1081].) Contrary to the People's contention, this rule does not conflict with the commandment in Penal Code section 4 not to apply the common law rule that penal statutes are to be strictly construed. ■ Although defendant is faced with civil and not criminal penalties, fundamental due process concerns of notice and fairness require us to interpret the statute in an identical manner.

I

Penal Code section 653k defines an illegal switchblade as "a spring-blade knife, snap-blade knife, gravity knife or any other similar type knife, [having a blade or blades] which can be released automatically . . . by any type of mechanism whatsoever." ■ The list of prohibited knives is not exhaustive. This language is intended to cover different types of knives which operate similarly to those expressly listed. ■ Such an interpretation supports the People's contention that the term "released automatically" encompasses not only knives in which the *blade* is quickly released from the handle, but also the subject knives where the blade is "set free from constraint in a spontaneous manner" by the retraction or removal of the sheath. ■ ■ This would include both the butterfly and Tekna knives.

A

■ Webster's Third New International Dictionary (1981) (hereafter Webster's), at page 1917, defines "release" to mean "2: to set free from restraint, confinement, or servitude." This term, as commonly understood, can easily describe the two types of knives under consideration where the blade is "exposed" or "set free" from the restraint of the sheath. We believe it would run contrary to the manifest intent of the Legislature to limit this statute to knives only where the blade is projected from the handle. The

trial court's interpretation is more restrictive than required by the statute, and for that reason we reject it.

Our conclusion is supported by the legislative history of Penal Code section 653k. The original bill became increasingly broader in scope as it went through successive drafts and when it was amended. As originally proposed, the statute proscribed switchblade knives with a blade three inches or longer, but only if carried concealed on a person. (Assem. Bill No. 202 (1957 Reg. Sess.) § 1.) In successive drafts, the bill was broadened to bar switchblades with two-inch blades (Assem. Amend. Bill No. 202 (1957 Reg. Sess.) Mar. 13, 1957), and to also prohibit the sale, offer for sale, and transfer of such a knife (Assem. Amend. Bill No. 202 (1957 Reg. Sess.) Mar. 18, 1957). It was adopted in this form in 1957 (Stats. 1957, ch. 355, § 1, p. 999). In 1959, the statute added the "gravity knife" and expanded the mode of operation to include a "flip of the wrist" and "the weight of the blade." (Stats. 1959, ch. 355, § 1, p. 2278.) The Legislature intended to broaden the scope of the statute to include within its provision all those types of knives which operate in a similar manner to the ones listed.

■ The People ask us to read this statute in pari materia with the federal statute covering the same subject, the Switchblade Knife Act (15 U.S.C. §§ 1241-1244).[1] Although many of the operative terms are similar to those contained in the subject statute, there is no evidence that our statute was patterned after the federal act. To the contrary, the California statute was adopted in May 1957, over one year before the federal statute became law. (Stats. 1957, ch. 355, § 1, p. 999.) Accordingly, the rule that statutes on the same subject should be given consistent meanings has no application here. (See generally, *Coastal Care Centers, Inc.* v. *Meeks* (1986) 184 Cal.App.3d 85, 93 [228 Cal.Rptr. 883].) Nevertheless, the dramatic rise in switchblade crimes nationwide, as noted in the Congressional reports and hearings, must also have been evident to the California Legislature when it passed Penal Code section 653k in 1957. (E.g., see Sen. Rep. No. 1980, 85th Cong., 2d Sess., pp. 1-15 (1958); Hearings Before a Subcommittee of the House Com. on Interstate and Foreign Commerce on H.R. No. 4956, H.R. No. 7258, 85th Cong., 1st Sess., and H.R. No. 9820, H.R. No. 10618, H.R. No. 11289, 85th Cong., 2d Sess., pp. 1-33 (1958) [bills to prohibit the introduction, or manufacture for introduction, into interstate commerce, of switchblade knives].)

---

[1] United States Code, title 15, section 1241 provides: "As used in this chapter . . . . [¶] . . . (b) The term 'switchblade knife' means any knife having a blade which opens automatically—[¶] (1) by hand pressure applied to a button or other device in the handle of the knife, or [¶] (2) by operation of inertia, gravity, or both."

## B

 The People argue that the terms "automatically" and "mechanism" refer to the rapid opening of the knife by any combination of mechanical, hand and/or gravity maneuvers. Defendant argued at trial that the butterfly knife has no automatic mechanism and can only be opened manually. The defendant concedes the knife can be opened rapidly, but argues that the several intermediate steps required to open it—i.e., a combination of gravity, wrist and arm actions—cannot be considered automatic or a mechanism.

In relevant part, the dictionary defines "automatic" as "3: having a self-acting or self-regulating mechanism that performs a required act at a predetermined point in an operation . . . . 4: marked by spontaneous or apparently spontaneous action." (Webster's, *op. cit. supra,* at p. 148.) "Spontaneous," in turn, is defined as "2: arising from immediate natural impulse," i.e., suddenly. (*Op. cit. supra,* at p. 2204.) Definition number four appears most suited to the purpose of the statute, i.e., to ban a knife which can be used to attack its target quickly, surreptitiously and without opportunity for self-defense or flight. As the videotaped demonstration by Officer Hart proves, the butterfly and Tekna knives can be opened with one hand quickly, arguably as fast as a traditional switchblade, with little or no training. The word "automatically" in Penal Code section 653k includes the sudden and immediate opening or exposing of the knife blade.

## C

 The People also contend that the phrase "any type of mechanism whatsoever" is broad enough to encompass the manner of opening the butterfly knife. (It is conceded the Tekna knife operates mechanically.) The court determined the "numerous wrist and arm movements [that] are required to open the knife" do not constitute a single "flip of the wrist" as provided in the statute, and do not fall within the term, "any type of mechanism whatsoever."

It is apparent after viewing the demonstration that the butterfly knife has several moving parts which must be manipulated in a certain manner in order for it to open for use. There is no legal significance that the officer needed several quick wrist movements to accomplish this.

"Mechanism" is defined as "1a: a piece of machinery: a structure of working parts functioning together to produce an effect . . . . 2: mechanical operation or action." (Webster's, *op. cit. supra,* at p. 1401.) The movable parts of the butterfly knife, which act together to open the blade for use,

constitute a mechanism. The fact that the user must also manipulate his wrist to make it work does not remove it from the statute. That the same wrist action is encompassed in Penal Code section 653k is evidenced by the statutory language which includes knives that open with a "flip of the wrist" and "any type of mechanism whatsoever." The combination of moves needed to open the butterfly knife can be characterized as flips of the wrist. The Attorney General was presented with the same question and also concluded that the butterfly knife was a switchblade. (68 Ops.Cal.Atty.Gen. 332, 335 (1985).)

More particularly, the gravity knife, as described by defendant's expert, also opens with a flip of the wrist after a latch is released. This has obvious similarities to the butterfly knife. The butterfly knife may require more steps to operate than the steps needed to open the gravity knife, but it is the speed and ease of operation that concerned the Legislature. The butterfly knife is opened rapidly with one hand and is ready for use; any distinction based on a difference of a fraction of a second would run contrary to the objective behind the statute. (See generally, *People* v. *Aston, supra,* at pp. 490-491.) We conclude the butterfly and Tekna knives at issue are illegal switchblades as defined by the statute.

■ Defendant urges us to consider the decision in *Taylor* v. *McManus* (E.D.Tenn. 1986) 661 F.Supp. 11, 15, where the district court held that butterfly knives, like the ones under consideration, were not prohibited switchblades since they do not open ready for use "automatically by force of gravity or inertia," as required by the federal act. That decision has been reversed in *Taylor* v. *U.S.* (6th Cir. 1988) 848 F.2d 715. The United States Court of Appeals reviewed the language and the legislative history, and found that the term "automatically" does not preclude some additional hand movements, combined with gravity and/or inertia, to open the knife. (*Id.,* at pp. 719-720.) Any precedential effect of this case supports the conclusion that the butterfly knives at issue are prohibited switchblades.

## II

■ ■ The trial court found the Tekna knife did not fall within the statute because the sheath retracts, not the blade, and it does not have "the appearance of a pocketknife." We construe the statute to include knives where the blades were released or exposed either by movement of the blade itself or the retraction of the sheath. The Tekna knife has a spring mechanism just like a switchblade, and when activated by depressing a single button at the rear of the handle it retracts the sheath into the handle exposing the blade. It is designed to operate with one hand with the same split-second speed as a switchblade. Functionally, it is of no legal

significance that the handle is pulled away from the blade rather than the other way around.

"Pocketknife" is defined as "a knife with a blade folding into the handle to fit it for being carried in the pocket." (Webster's, *op. cit. supra,* at p. 1747.) According to its patent application, the Tekna knife is a safety utility knife which can be carried in a pocket or purse. Its total length is about five inches. Like a pocketknife it can be carried undetected on a person. Both the People's and defendant's witnesses testified that the Tekna knife looks different from a pocketknife. But its unique design is not dispositive. As with a pocketknife and the butterfly knife, the Tekna knife's blade is contained in a handle or sheath that is integral to the body of the knife (as opposed to a removable sheath) and from which the blade may be quickly exposed. We conclude that the Tekna knife, with its compact dimensions and its covered blade, has "the appearance of a pocketknife" within the meaning of the statute.

The judgment is reversed. The superior court is directed to enter judgment in favor of the People. The matter is remanded for a hearing to determine the scope of the injunctive relief appropriate and the amount of civil penalties, if any, to be imposed.

King, J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 20, 1989.