**STATE of Alaska, Appellant,**

v.

**John E. STRANGE, and Rudy Kempen, Appellees.**

**STATE of Alaska, Appellant,**

v.

**John E. STRANGE, Christopher A. Stading, and Troy Gonzales, Appellees.**

**Nos. A–2637, A–2638.**

Court of Appeals of Alaska.

Jan. 19, 1990.

---

**564**

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible and Douglas B. Baily, Attys. Gen., Juneau, for appellants.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John B. Salemi, Acting Public Defender, Anchorage, for appellees Strange and Kempen.

Nancy J. Nolan, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellees Strange, Stading, and Gonzales.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

**SINGLETON, Judge.**

Each of these defendants was indicted by a grand jury for first-degree misconduct involving weapons, a class C felony, in violation of AS 11.61.200(a)(3). This statute makes it a felony to possess a "prohibited weapon." "Prohibited weapon" is defined in AS 11.61.200(e)(1)(D) to include a "switchblade or gravity knife." Neither "switchblade" nor "gravity knife" is specifically defined in the statutes. *See State v. Weaver*, 736 P.2d 781, 782 (Alaska App. 1987). Each of these defendants possessed a "butterfly knife" which is also known as a "balisong knife." The sole question presented by these appeals is whether a butterfly or balisong knife is a prohibited switchblade or gravity knife.

Two evidentiary hearings were held: the first, in Fairbanks before Judge Jay Hodges involved John E. Strange and Rudy Kempen; the second, in Anchorage before Judge Mark C. Rowland involved Strange, again, Christopher A. Stading, and Troy Gonzales. Judge Hodges and Judge Rowland independently determined that a butterfly knife is not a prohibited weapon and therefore dismissed the charges against the defendants and the state appeals. We affirm.

■ Because neither gravity knife nor switchblade knife · are defined in Alaska statutes, we must look to general usage for their meaning. AS 01.10.040. In determining the meaning of words in common usage, we generally look to the dictionary. *See Walker v. State*, 742 P.2d 790, 791 (Alaska App.1987). The dictionary defines a switchblade knife or switchblade "as a pocketknife having the blade spring-operated so that pressure on a release catch causes it to · fly open." *Webster's Third New International Dictionary of the English Language* Unabridged, 2314 (1966) (hereinafter *Webster's*). The butterfly or balisong knives which were seized in this case are identical to those described in *People v. Quattrone*, 211 Cal.App.3d 1389, 260 Cal.Rptr. 44, 45 (1 Dist.1989) as follows:

> The butterfly knife sold by defendant has a fixed blade over two inches long. When not in use, a two-part handle is folded around the blade as a sheath and is secured by a latch at the base of the knife. To open, the latch is released, allowing the two halves of the sheath to swing down on pivots to form a handle exposing the blade. The handle may be

secured manually or closed with the latch.

The knives introduced in evidence and demonstrated in the videotapes prepared at the evidentiary hearing satisfy this definition. It is not seriously contended that the butterfly or balisong knives are switchblade knives as we have defined that term. Rather, the contention is that they are gravity knives. In *Weaver*, we addressed the definition of gravity knives. We said:

> The term [gravity knife] has a readily ascertainable and consistent definition. As commonly understood, a gravity knife is one in which the blade opens, falls into place, or is ejected into position by the force of gravity or by centrifugal force....
>
> Furthermore, in the Alaska Statute on prohibited weapons, the term "gravity knife" is used in conjunction with "switchblade knife." AS 11.61.200(e)(1)(D). The ordinary person is therefore put on notice that a "gravity knife" must be similar to a switchblade in operating automatically or semi-automatically. The pertinent characteristics which a switchblade and a gravity knife have in common are that they are easily concealed and quickly brought to bear. These characteristics are indicative of knives which are used as weapons rather than tools. Some utility knives are quickly brought to bear, such as a fishing knife or hunting knife in a sheath, but are not easily concealed. Indeed, it is only when these utility knives are concealed that their possession is unlawful. AS 11.61.220(a)(1). An ordinary pocket knife may be concealed upon the person. AS 11.61.220(a)(1). However, an ordinary pocketknife is incapable of being quickly brought to bear.

*Weaver*, 736 P.2d at 782–83 (footnote omitted).

The two evidentiary hearings produced essentially the same evidence. At the first hearing in Fairbanks, the defendants called Wayne Ross, a local attorney, as a weapons expert to testify that the terms switchblade and gravity knife have a commonly accepted meaning in the weapons trade and that balisong or butterfly knives do not fall within either meaning. He testified that gravity knives, like switchblade knives are released by a button, but differ from switchblade knives in that they do not have a spring. Ross testified that gravity knives were developed by German paratroopers in World War II as a utility knife to cut parachute shrouds.

The state called Alaska State Trooper Jeffrey Hall at the first hearing in Fairbanks to show how easily butterfly knives could be brought to bear. He testified that butterfly knives were primarily used in the martial arts and in combat. He also testified that a butterfly knife was not within his understanding of the term switchblade knife or gravity knife. The defense also put on a number of witnesses to testify that butterfly knives were readily available in commercial stores in Anchorage and Fairbanks.

Testimony before Judge Rowland at the second hearing in Anchorage paralleled testimony before Judge Hodges with one exception. Trooper Hall who had been called as a prosecution witness in Fairbanks was called as a defense witness in Anchorage. The state introduced a videotape of Alaska State Trooper John Johnston demonstrating the use of three of the butterfly knives which had been seized from defendant Strange. Trooper Johnston showed that the knives could be easily concealed on the body and could quickly be brought to bear by a series of wrist movements utilizing centrifugal or inertial force. He indicated that he had only had about ten minutes experience with butterfly knives before making the videotape. He was able to bring the knives to bear quickly even though he took them as he found them without oiling them or working them to make them loose and easier to open.

Trooper Johnston's demonstration paralleled one given in *Quattrone*, where the officer was also able to rapidly open and lock the butterfly knife with one hand using three wrist movements. In that case, the officer testified that he needed only half an hour to perfect his technique. *Quattrone*, 260 Cal.Rptr. at 45.

A number of courts have considered whether butterfly or balisong knives qualify as prohibited switchblade or gravity knives. *See, e.g., Taylor v. United States,* 848 F.2d 715 (6th Cir.1988); *Precise Imports Corporation v. Kelly,* 378 F.2d 1014 (2d Cir.1967), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); *Quattrone,* 260 Cal.Rptr. 44; *People v. Dolson,* 142 Misc.2d 779, 538 N.Y.S.2d 393 (N.Y.Co. Ct.1989); *People v. Mott,* 137 Misc.2d 757, 522 N.Y.S.2d 429 (N.Y.Co.Ct.1987). The courts, which disagree on whether butterfly knives are switchblades or gravity knives, have not been particularly helpful because of differences in statutory language. In *Quattrone,* the court dealt with California Penal Code § 653k which "defines an illegal switchblade as 'a spring-blade knife, snap-blade knife, gravity knife or any other similar type knife, [having a blade or blades] which can be released automatically ... by any type of mechanism whatsoever.'" *Quattrone,* 260 Cal.Rptr. at 46. In *Taylor,* the court dealt with the Switchblade Knife Act which defines a switchblade knife at 15 U.S.C. § 1241(b) as follows:

> The term "switchblade knife" means any knife having a blade which opens automatically—
>
> (1) by hand pressure applied to a button or other device in the handle of the knife, or
>
> (2) by operation of inertia, gravity or both.

*Taylor,* 848 F.2d at 716 n. 1. Both of these definitions are broader than the definitions in our statute which simply uses the terms without further defining them. *Taylor* is also distinguishable because the court there relied heavily on an administrative interpretation of the Act in determining that balisong or butterfly knives were covered.

The New York cases dealt with New York Penal Code § 265.00(5) which stated that:

> "Gravity knife" means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.

The New York cases held balisong or butterfly knives not to be gravity knives because they were not locked in place by means of a button, spring, lever or other device when released. *Dolson,* 538 N.Y. S.2d 393; *Mott,* 522 N.Y.S.2d 429. Our statute does not have similar language.

Having carefully reviewed the statutes and the knives introduced into evidence and bearing in mind that criminal statutes should be strictly construed against the government, *see State v. Andrews,* 707 P.2d 900, 907 (Alaska App.1985), *aff'd,* 723 P.2d 85 (Alaska 1986), we conclude that butterfly knives and balisong knives are not gravity knives.

A number of considerations lead us to this conclusion. First, butterfly knives are not "switchblade knives in which the blade is sprung by a downward snap of the wrist." *Webster's* at 993. As we have seen, these knives do not meet the definition of switchblade knives. Nor are they sprung by a downward snap of the wrist. In fact, a number of motions, albeit quickly performed, are necessary to bring the knives to bear. These knives also do not fit the definition of automatic or semi-automatic. Finally, these knives do not appear to fit the common understanding of the term gravity knife or the way that the term is used in common usage. *See, e.g., Quattrone,* 260 Cal.Rptr. at 47–48. It is instructive that the expert testimony in *Quattrone* apparently paralleled the expert testimony given at the two evidentiary hearings in this case regarding the meaning of the term "gravity knife."

The judgment of the superior court is AFFIRMED.