811 P.2d 576

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**James RIDDALL, Defendant-Appellant.**

No. 11928.

Court of Appeals of New Mexico.

March 26, 1991.

Certiorari Denied May 8, 1991.

Tom Udall, Atty. Gen., Elizabeth Major, and Max Wilson Shepherd, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Appellate Defender, and Amme M. Hogan, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Judge.

Defendant appeals his convictions of unlawful possession of a switchblade and unlawful carrying of a deadly weapon. On appeal, defendant has raised five issues. The first two concern NMSA 1978, Section 30–7–8 (Repl.Pamp.1984), which makes the possession of "switchblades" unlawful. They are: (1) whether a butterfly knife is a switchblade within the meaning of that section, and (2) whether Section 30–7–8 is unconstitutionally vague. The other issues raised on appeal include (3) whether the trial court erred in allowing a police officer to demonstrate the knife as part of the state's case under Section 30–7–8, (4) whether the trial court erred in joining the misdemeanor charges with the felony charge, and (5) whether there was sufficient evidence to convict defendant of unlawfully carrying a deadly knife, pursuant to NMSA 1978, Section 30–7–2 (Repl.Pamp. 1984). On the court's own motion, we asked the parties to brief the additional issues of whether defendant's conviction for unlawful carrying of deadly knife merged with his conviction for unlawful possession of a switchblade and whether that issue might be raised for the first time on appeal. We now affirm defendant's conviction for possession of a switchblade contrary to Section 30–7–8, but we reverse as to his conviction for unlawfully carrying a deadly knife contrary to Section 30–7–2, and remand with instructions to enter an amended judgment in conformity with this opinion.

FACTS.

Defendant, a twenty-five-year-old man, was a clerk at an Allsup's store in Roswell. On May 23, 1989, at about 6:00 or 6:30 p.m., Frank Montoya, age twelve, and his sister Reynalda, age fifteen, came into the store. When Reynalda asked for a pack of cigarettes, defendant, recognizing her as a previous customer, said that he wanted a pack of kisses and pointed to his cheek. According to defendant, he intended this as a joke. Defendant says Frank then threatened to come over the counter. Defendant took a butterfly knife out of his pocket and opened it. He pointed the knife upward. Frank asked if it was a butterfly knife. Defendant told him that it was and held it out for him to see. Defendant then put the knife back in his pocket and Frank and Reynalda left. Apparently they told family members about the incident. The family returned to the store and two older brothers threatened defendant. The police were called. The family told the police essentially the same story as did defendant. When defendant produced the knife, an officer retained it, saying that it was prohibited by local ordinance. At that time, defendant was not charged with any offense because the officer was not sure whether the knife was a switchblade. Subsequently, defendant was charged with aggravated assault, a fourth degree felony, as well as unlawful possession of a switchblade and unlawfully carrying a deadly weapon, both of which are petty misdemeanors. At trial before a jury, defendant was acquitted of the felony charge but convicted on both of the other charges.

## WHETHER A BUTTERFLY KNIFE IS A "SWITCHBLADE" WITHIN THE MEANING OF SECTION 30–7–8.

A number of states have prohibited the possession of "switchblades." Some purport to define a switchblade knife narrowly. *See, e.g.,* Nev.Rev.Stat.Ann. § 202.350(5)(d) (Michie 1987). Others define a switchblade knife broadly. *See, e.g.,* Haw.Rev.Stat. § 134–52 (1985); Tex.Penal Code Ann. § 46.01(11) (Vernon 1989); Wis. Stat.Ann. § 941.24 (West 1982). Still others prohibit the switchblade knife as a particular kind of dangerous weapon and at the same time prohibit a second type of knife, defined broadly, as a more general kind of dangerous weapon. *See, e.g.,* Kan. Crim.Code Ann. § 21–4201 (1988); Me.Rev.

Stat.Ann. tit. 17–A, § 1055(1) (1983); Wash. Rev.Code Ann. § 9.41.250 (1977). New York is the only state we have been able to identify that lists a number of specific types of knives and defines each individually. *See* N.Y.Penal Law § 265.00 (Consol. 1984).

In reviewing the statutes of other jurisdictions, we note that certain language appears in the statutes of those jurisdictions that define a switchblade broadly as well as those that prohibit the switchblade knife as a particular kind of dangerous weapon and at the same time prohibit a second type of knife, defined broadly. In both kinds of statutes, the phrase "any knife having a blade which opens or falls or is ejected into position by the force of gravity or by any outward or centrifugal thrust or movement," or something quite similar, recurs. *Compare* Tex.Penal Code Ann. § 46.01(11) (" 'Switchblade knife' means any knife that has a blade that ... (B) opens or releases a blade from the handle or sheath by the force of gravity or by the application of centrifugal force") *with* Kan.Crim.Code Ann. § 21–4201 (defining "[u]nlawful use of weapons" as "knowingly * * * possessing * * * any knife having a blade that opens or falls or is ejected into position by the force of gravity or by an outward, downward or centrifugal thrust or movement"). The same language appears in Section 30–7–8. However, we have not been able to locate case authority in any of the jurisdictions with similar statutes.

In interpreting a statute, an appellate court is obligated to give the words used by the legislature their plain meaning. *See Smith v. Village of Corrales,* 103 N.M. 734, 713 P.2d 4 (Ct.App.1985). In understanding the legislature's meaning, however, it is equally important to consider the intended purposes of the provision in which the words appear. *See Miller v. New Mexico Dep't of Transp.,* 106 N.M. 253, 741 P.2d 1374 (1987). In this case, the words used and the intended purpose of the provision in which the words are contained indicate that the legislature intended to include a "butterfly knife" within the term "switchblade knife."

Section 30–7–8 provides as follows:

Unlawful possession of switchblades consists of any person * * * possessing, displaying, offering [or] selling * * * any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife, or any knife having a blade which opens or falls or is ejected into position by the force of gravity or by any outward or centrifugal thrust or movement.

Defendant makes several arguments that a butterfly knife is not a switchblade within the meaning of Section 30–7–8. First, he argues that Section 30–7–8 applies only to knives of which the blade moves rather than the handle. He contends that with the knife in this case it is the *handle* that moves, not the blade. This is only partially correct.

The jury saw a demonstration of how the knife opens. This court also saw a demonstration of how the knife opens at oral argument.

To open a butterfly knife like the one in this case, the wielder begins by holding both halves of the handle. The point is *toward* the wielder, although the blade and point are not exposed. To open the knife, the wielder releases one of the halves of the handle and through a combination of gravity and centrifugal force, the latter generated by a movement of arm or wrist, the wielder swings that half of the handle around until it meets the other half. However, these forces also swing the *blade* into position. Once the maneuver is complete, the blade is exposed and pointing *away* from the wielder. Thus, the blade of the butterfly knife is one that "opens or falls or is ejected into position by the force of gravity or by any outward or centrifugal thrust or movement." *Id.*

It is of no legal significance that a combination of gravity and centrifugal force is required. The phrase "any outward or centrifugal thrust or movement" suggests a legislative intent to include knives that require a combination of forces to operate.

In *People v. Quattrone*, 211 Cal.App.3d 1389, 260 Cal.Rptr. 44 (1989), the California court addressed an argument that is very similar to the interpretation of the statute advanced by defendant. The California statute outlawed knives with blades that " 'can be released automatically * * * by any type of mechanism whatsoever.' " *Id.* at 1394, 260 Cal.Rptr. at 44 (quoting Ca. Pen.Code, § 653k (1988)). One of the knives involved in *Quattrone* was a "Tekna sheath-retracting knife." This is a fixed-blade knife; the blade does not fold into, or even move relative to, the handle. As the court described it, "A two-part plastic sheath protects the blade. The sheath is spring activated and retracts into the handle when the user pushes a button at the bottom of the handle." *Id.* at 1394, 260 Cal.Rptr. at 45. Nevertheless, the court concluded that "it is of no legal significance that the handle is pulled away from the blade rather than the other way around." *Id.* at 1398–99, 260 Cal.Rptr. at 48.

The California court also thought it was of no legal significance that a knife might require several steps to operate, as does a butterfly knife, because "it [was] the speed and ease of operation that concerned the Legislature." *Id.* at 1398, 260 Cal.Rptr. at 47. We agree with the California court's analysis.

Defendant also argues that "if the legislature had intended to include butterflies in the definition of a switchblade, it would have included the knife by its known name, or by not specifying that the blade is what opens." In part, this argument rests on a premise that we have just rejected. What remains is the assertion that if the legislature had intended to outlaw butterflies it would have referred to them by name.

This is not necessarily so. The legislature may have felt that it could more clearly identify the knives that were prohibited by describing the types of knives it wished to outlaw in terms of their manner of opening than by trying to name all of the types of knives which functioned in that way. In this regard, we note that Webster's Third New International Dictionary (1966) contains definitions of "centrifugal force" (p. 363) and "gravity" (p. 993), while it has no entry for "butterfly knife" or "Balisong knife," which is another name for a butterfly knife. *See People v. Quattrone.* The legislature is not required to refer to butterfly knives by name, particularly where there is no reason to believe that many members of the public would know what a butterfly knife is.

We recognize that an Alaska court has ruled that butterfly knives are not within that state's statutory prohibition on "switchblades" and "gravity knives." *State v. Strange*, 785 P.2d 563 (Alaska Ct.App.1990) (citing Alaska Stat. 11.61.-200(e)(1)(D) (1989)). However, neither term is defined in the Alaska statutes. *Id.* In *Strange*, the court favorably cited *State v. Weaver*, 736 P.2d 781 (Alaska Ct.App.1987), and quoted the following passage from that opinion:

> "[I]n the Alaska Statute on prohibited weapons, the term 'gravity knife' is used in conjunction with 'switchblade knife.' The ordinary person is therefore put on notice that a 'gravity knife' must be similar to a switchblade in operating automatically or semi-automatically. The pertinent characteristics which a switchblade and a gravity knife have in common are that they are easily concealed and quickly brought to bear. These characteristics are indicative of knives which are used as weapons rather than tools. Some utility knives are quickly brought to bear, such as a fishing knife or hunting knife in a sheath, but are not easily concealed. Indeed, it is only when these utility knives are concealed that their possession is unlawful. An ordinary pocket knife may be concealed upon the person. However, an ordinary pocket knife is incapable of being quickly brought to bear."

*State v. Strange*, 785 P.2d at 565 (quoting *State v. Weaver* at 782–83 (citations and footnote omitted)). The court found that the butterfly knife did not fit the dictionary definition of either switchblade or gravity knife, or the common understanding of gravity knife and that butterfly knives do not open automatically or semi-automatical-

ly. *Id.* at 566. We do not find either *Strange* or *Weaver* persuasive because the Alaska statute is not similar to the New Mexico statute. The Alaska court was forced to define "switchblade knife" for itself. This court, on the other hand, is provided with a statutory description of the type of knife which is prohibited. The question before this court is what that description includes. *Cf. People v. Quattrone* (court construed its statute prohibiting the sale or offer for sale of switchblades to include butterfly knives).

We also note that in *People v. Dolson,* 142 Misc.2d 779, 538 N.Y.S.2d 393 (1989), the court concluded that the knife in question, which from the court's description was apparently a butterfly knife, was not a gravity knife. The New York statute defined a gravity knife in the following manner: " '[A]ny knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.' " *Id.* at 780, 538 N.Y.S.2d at 394 (quoting N.Y.Pen.Law § 265.00(5)). The court ruled that the knife was not within this definition. However, this was only because the blade did not lock into place "when released"; to lock it, the wielder had to manually secure the latch, the same as the knife in this case. *Id.* The court conceded that the knife could be exposed by centrifugal force. *Id.* The New Mexico statute does not require that the blade lock for a knife to be a switchblade. To the extent that "released from the handle or sheath" is equivalent to "opens or falls or is ejected into position," *Dolson* supports affirmance in the instant case. *But see People v. Mott,* 137 Misc.2d 757, 758, 522 N.Y.S.2d 429, 430 (1987) ("A [butterfly] knife does not have a blade which is released by the force of gravity or application of centrifugal force") (citing *United States v. 1,044 Balisong Knives,* Civ. 70–110 (D.C.Oregon, 1970)).

In *Mott,* the court stated that if the New York Legislature had intended to include butterfly knives in the class of prohibited weapons, it would have mentioned butterfly knives, which have been in existence for several hundred years, by name. *Id.* at 759, 522 N.Y.S.2d at 430–31. This is similar to an argument made by defendant in the instant case. However, the New York statute was drafted with a great deal of specificity, naming such items as " 'electronic dart gun[s],' " " 'pilum ballistic knives,' " and " 'chuka stick[s].' " *See id.* The New Mexico statute does not evince the same specificity. Therefore, the argument is not persuasive as to the New Mexico statute.

Finally, defendant has suggested that Section 30–7–8 lends itself to a construction that would include butterfly knives as well as to one that would exclude them. *Cf. Taylor v. United States,* 848 F.2d 715 (6th Cir.1988) (court of appeals deferred to administrative agency's interpretation of federal statute prohibiting switchblades as including butterfly knives, which made such knives subject to seizure and forfeiture through administrative process, while acknowledging that another interpretation would have been reasonable). Defendant asks us to resolve any doubt we have about construction of this statute in favor of the rule of lenity. *See State v. Haddenham,* 110 N.M. 149, 793 P.2d 279 (Ct.App.1990); *see also State v. Bybee,* 109 N.M. 44, 46, 781 P.2d 316, 318 (Ct.App.1989).

We have carefully considered this argument. However, given the language of the statute and its apparent purpose, we conclude that the legislature intended Section 30–7–8 to include butterfly knives. Under these circumstances, we do not apply the rule of lenity.

WHETHER SECTION 30–7–8 IS UNCONSTITUTIONAL.

 Defendant contends that if Section 30–7–8 includes butterfly knives, it is unconstitutionally vague. We disagree.

"[T]he void for vagueness doctrine * * * requires 'that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *State v. Brecheisen,* 101 N.M. 38, 42, 677 P.2d 1074,

1078 (Ct.App.1984) (quoting *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). Defendant asserts that a store in Roswell is selling butterfly knives and has not been subjected to enforcement of the switchblade statute.

Defendant has pointed to what appears to be discrimination in the enforcement of the switchblade statute. However, there is nothing to indicate that this discrimination has been encouraged by the way the statute defines the prohibited conduct.

When a statute is challenged on the basis of the void for vagueness doctrine, the reviewing court presumes that the statute is valid. *Id.* Defendant has failed to overcome this presumption. *Cf. Hayes v. State,* 672 S.W.2d 246 (Tex.Ct.App.1984) (holding statute governing offense of unlawfully carrying an illegal knife is not unconstitutionally void for vagueness).

The terms of the statute have specific meanings and can be defined unambiguously. Giving those words their ordinary meanings results in a reasonable and practical construction. Therefore, the statute is not void for vagueness. *Id.*

WHETHER THE TRIAL COURT ERRED IN PERMITTING A DEMONSTRATION OF THE KNIFE.

■ Defendant argues the trial court erred in permitting a demonstration of how the knife worked because the officer who conducted the demonstration did not know how the knife was opened by defendant. However, we are not persuaded that the way in which defendant opened the knife was relevant to whether the knife was a switchblade. The issue for the jury in this case was how the knife could be opened. Therefore, the officer's demonstration was properly allowed over the objection made at trial. *See* §§ 30–7–2, –8.

Defendant now asserts that his objection at trial that there was no foundation for the officer to testify about the knife, which was overruled without comment, should be understood to have included the contention that the officer was not properly qualified as an expert. After reviewing the record, we do not believe the objection included this contention. Counsel's objection to lack of foundation refers to the fact that the officer did not know how defendant actually opened the knife, not to the fact that the officer had not been qualified as an expert. Therefore, the issue was not preserved. *See State v. Lucero,* 104 N.M. 587, 725 P.2d 266 (Ct.App.1986); *State v. Gray,* 79 N.M. 424, 427, 444 P.2d 609, 612 (Ct.App. 1968) (a "general objection as to lack of proper foundation did not include [other specific] grounds of objection, because it failed to alert the trial court to the nature of the objections which are now being urged upon us").

JOINDER.

■ Defendant argues that he was denied due process by a criminal information that did not substantially comply with the bind-over order and contained two misdemeanor charges in addition to the felony charge for which he had been bound over. This contention has no merit.

The prosecutor can choose to bring misdemeanor charges in district court. *State v. Muise,* 103 N.M. 382, 707 P.2d 1192 (Ct.App.1985). Since the two misdemeanor charges arose out of the same incident as the felony charge, the charges could be joined. SCRA 1986, 5–203. Since a probable cause hearing is not required on misdemeanor charges, the prosecutor was not required to include those charges in the complaint in magistrate court. *State v. Greyeyes,* 105 N.M. 549, 734 P.2d 789 (Ct. App.1987).

To establish that his right to due process has been violated, defendant must make some showing of prejudice. *See Deats v. State,* 80 N.M. 77, 451 P.2d 981 (1969). Defendant claims that he was prejudiced because he was not given notice of all of the charges against him as early as he should have been. However, he indicates that it would have been acceptable for the prosecutor not to raise the misdemeanor charges in the complaint in magistrate court if he had filed a separate information for them in district court and then moved to join. We cannot see how this would have given him earlier notice of any of the charges against him. Under these circum-

stances, we conclude defendant's due process argument as to the joinder issue lacks merit.

## WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION UNDER SECTION 30–7–2.

According to defendant, no evidence was introduced to show that this knife was capable of producing death or great bodily harm. Therefore, he contends there was insufficient evidence to convict him under Section 30–7–2. However, the prosecution was not required to prove that the knife could actually be used to inflict great bodily harm.

Unlawful carrying of a deadly weapon consists of carrying a concealed deadly weapon anywhere. § 30–7–2. A deadly weapon is "any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, * * * switchblade knives, * * * and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted[.]" NMSA 1978, § 30–1–12(B) (Repl.Pamp.1984).

The instructions given to the jury included the following:

> For you to find the defendant guilty of unlawful carrying of a deadly weapon * * * the State must prove * * * beyond a reasonable doubt [that]
>
> 1. The defendant had a butterfly knife concealed on his person;
>
> 2. A butterfly knife is a deadly weapon[.]
>
> A "deadly weapon" includes a switchblade knife. § 30–1–12(B).

There was no objection to the jury instruction, and there is no appellate claim that it was erroneous. Consequently, the instruction became the law of the case. *State v. Dominguez*, 91 N.M. 296, 573 P.2d 230 (Ct.App.1977).

Here, the prosecution needed to prove only that the butterfly knife was a switchblade. There was sufficient evidence that the knife carried by defendant was a switchblade as defined in Section 30–7–8.

## MERGER.

On the court's own motion, this court asked the parties to address two additional issues. Those were (a) whether defendant's conviction for unlawful carrying of a deadly weapon merged with his conviction for unlawful possession of a switchblade, and (b) whether that issue might be raised for the first time on appeal. The parties agree that the conviction for unlawful carrying merged with the conviction for unlawful possession, *see State v. Bachicha*, 111 N.M. 601, 808 P.2d 51 (Ct.App.1991) and that the issue may be raised for the first time on appeal. *See State v. Edwards*, 102 N.M. 413, 696 P.2d 1006 (Ct. App.1984). Under these circumstances, the case should be remanded with instructions to enter an amended judgment. *See State v. Jacobs*, 102 N.M. 801, 701 P.2d 400 (Ct. App.1985).

## CONCLUSION.

We conclude that a butterfly knife is within the definition of "switchblade" in Section 30–7–8. We hold that this definition is not unconstitutionally vague. We find no error in the admission of a demonstration of how such knives are commonly opened. We find no error in the joinder of the misdemeanor charges with the felony charge, nor, even if there was error, do we see any prejudice to defendant. Having concluded that the knife is a switchblade, and that ample evidence that it was a switchblade was presented, we conclude that there was sufficient evidence that the knife was a deadly weapon within the meaning of Section 30–7–2. However, we hold that the conviction under Section 30–7–2 merged with the conviction under Section 30–7–8, and consequently defendant should not have been sentenced for both. We affirm the conviction for unlawful possession contrary to Section 30–7–8, but we reverse the conviction for unlawful carrying contrary to Section 30–7–2, and remand for entry of an amended judgment in conformity with this opinion.

IT IS SO ORDERED.

DONNELLY, J., concurs.

APODACA, J., dissents.

APODACA, Judge, dissenting.

I respectfully disagree with the majority's affirmance of defendant's conviction under NMSA 1978, Section 30–7–8 (Repl. Pamp.1984). I would hold that a butterfly knife is not a switchblade knife under the provisions of that statute. I would thus reverse defendant's conviction of violating Section 30–7–8 (unlawful possession of a switchblade knife). Additionally, because the state pursued defendant's conviction under NMSA 1978, Section 30–7–2 (Repl. Pamp.1984) (unlawful carrying of a deadly weapon) on the premise that defendant's knife was a switchblade knife and thus failed to produce evidence adducing that the knife could inflict great bodily harm, I would hold that there was insufficient evidence to convict defendant under Section 30–7–2 as well. For this reason, the merger issue need not be addressed.

## THE CONVICTION UNDER SECTION 30–7–8

The bases for my disagreement with the majority can be simply stated. For the most part, I do not take issue with much of the majority's discussion. However, its discussion does not go far enough—it does not sufficiently address some important aspects of defendant's arguments on appeal. Among other authority, defendant relies on two of this court's prior decisions that, in my view, dictate the course we should take in this appeal. Those cases are *State v. Bybee*, 109 N.M. 44, 781 P.2d 316 (Ct.App. 1989) and *State v. Keith*, 102 N.M. 462, 697 P.2d 145 (Ct.App.1985).

In *Keith*, this court addressed the construction of two conflicting statutes involving sentencing of the defendant. In applying generally recognized principles of statutory construction, *Keith* held that the statute there must be strictly construed in favor of the defendant. It also held that "[d]oubts about the construction of criminal statutes are resolved in favor of the rule of lenity." *State v. Keith*, 102 N.M. at 465, 697 P.2d at 148. Later, in *Bybee*, this court addressed the question of whether the act of breaking into a soft drink vending machine violated our burglary statute. *Bybee* concluded that our legislature did not intend a vending machine to constitute a "structure" within the meaning of our burglary statute and thus reversed defendant's burglary conviction. Relying on the principle enunciated in *Keith*, *Bybee* held that "[a] criminal statute may not be made applicable beyond its intended scope, and it is a fundamental rule that crimes must be defined with appropriate definiteness." *State v. Bybee*, 109 N.M. at 46, 781 P.2d at 318. *Bybee* likewise held that statutes defining criminal conduct must be strictly construed.

*Bybee* and *Keith* are important to the resolution of this appeal because defendant contended below, as he does on appeal, that the statute at issue here, Section 30–7–8, is susceptible of different, yet reasonable constructions. Consequently, he argues that, under *Bybee* and *Keith*, we are obliged to adopt the construction most favorable to defendant. I agree.

To understand how our statute is subject to more than one interpretation, one need only to compare it to the provisions of similar statutes adopted by the state of New York. The majority correctly notes that our statute does not expressly define a switchblade knife or a gravity knife, as New York does. Technically, instead of defining the prohibited knives, our statute defines the specific act that constitutes the crime.

The pertinent statutory provisions of New York make it unlawful for a person to possess a deadly weapon, then proceeds expressly to include a switchblade knife and a gravity knife within the definition of a deadly weapon. *See* N.Y.Penal Law § 10.00 (Consol.1990). In a separate statutory provision, New York provides as follows:

4. "Switchblade knife" means any knife which has a blade which opens automatically by hand pressure applied to a button, spring, or other device in the handle of the knife.

5. "Gravity knife" means any knife which has a blade which is released from

the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.

N.Y.Penal Law § 265.00 (Consol.1984). For purposes of illustration, I will take the liberty of slightly modifying Section 30-7-8, by simply inserting certain material (denoted in brackets), as follows:

Unlawful possession of. switchblades consists of any person * * * possessing, displaying, offering * * * selling * * * [ (1) (description of the traditional switchblade knife) ] any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife *or* [ (2) (description of the traditional gravity knife) ] any knife having a blade which opens or falls or is ejected into position by the force of gravity or any outward or centifugal thrust or movement. [Emphasis added.]

In comparing our statute with that of New York, it can readily be seen that the description of each knife following (1) and (2) follows almost verbatim the language contained in the express definitions of switchblade knife and gravity knife in the New York statute. The only difference, as the majority has already noted, is that, in defining a gravity knife, the New York statute contains the additional language "is locked in place by means of a button, spring, lever or other device." The majority points to the absence of such language in our statute to support its rejection of *People v. Dolson,* 142 Misc.2d 779, 538 N.Y.S.2d 393 (1989), in which the New York court concluded that a butterfly knife was not a gravity knife under the New York statutory definition. I consider the absence of this language inconsequential. My understanding of the operation of the butterfly knife at issue in this appeal permits me to conclude it does indeed become "locked in place," either by a latch that is located at the end of one of the two handles or directly by the grip of the hand itself. On this factual basis, the blade does indeed become locked in place and therefore comes within the definition of the New York stat-

ute. The fact that our statute has not used this restrictive language is of no consequence.

What does this comparison demonstrate? Simply, it indicates at least one reasonable interpretation or construction of our statute—specifically, that our legislature intended to prohibit the possession of only two kinds of knives, namely, the traditional switchblade knife and the traditional gravity knife, and no more. I have previously expressed my concern that criminal statutes not be read too broadly lest we "step too far afield" of the conduct intended to be prohibited by the statute. *State v. Sanchez,* 105 N.M. 619, 622, 735 P.2d 536, 539 (Ct.App.1987) (Apodaca, J., specially concurring). I again express my concern and submit that a butterfly knife does not fit within either one of these traditional definitions. Although the knife operates generally in the same manner as gravity and switchblade knives, it is not traditionally considered to be one of them. It is this statutory construction that we are bound to adopt, since it is the construction most favorable to defendant. *See State v. Bybee; State v. Keith.* For these reasons, I would adopt, as law in New Mexico, the holdings of the New York court in *People v. Dolson* and of the Alaska court in *State v. Strange,* 785 P.2d 563 (Alaska Ct.App. 1990).

THE CONVICTION UNDER SECTION 30-7-2

The state, in trying the case against defendant under Section 30-7-2 (unlawful carrying of a deadly weapon), argued that the knife in question here was a switchblade knife. The state did so because the definition of a deadly weapon includes switchblade knives expressly by name. If the butterfly knife was not a switchblade knife, however, then the state was required to prove that the butterfly knife was a weapon that was "capable of producing death or great bodily harm." *See* NMSA 1978, § 30-1-12(B) (Repl.Pamp.1984). The state did not present such evidence. From this, I would conclude that there was insufficient evidence presented to the jury to

convict defendant of carrying a deadly weapon in violation of Section 30–7–2.

In summary, I would reverse both convictions for the reasons I have given and remand with instructions to dismiss the criminal charges against defendant. For these reasons, I dissent.